### L. SCHREIBER & SONS CO. v. GRIM et al.

#### (Circuit Court, S. D. Ohio, W. D. January 12, 1895.)

#### No. 4,618.

PATENTS—INVENTION—SUPPORTS FOR CASKS.

The Schreiber patent, No. 396,372, for a support for casks and barrels, consisting of saddles with concave upper surfaces, and convex lower surfaces resting in concave shoes, so as to rock them both longitudinally and transversely, and thus accommodate themselves to the cask at the point of support, *held* void as to claim 6, for want of invention, and as being a mere application of the old ball and socket joint.

This was a bill by the L. Schreiber & Sons Company against Ignaz Grim and Philip Selbert for infringement of a patent for supports for casks and barrels.

Wood & Boyd, for complainant.
James Moore, for defendants.

SAGE, District Judge. The suit is for infringement of patent No. 396,372, granted complainant January 15, 1889, for a barrel stand, designated in the specification as an improvement in cask supports. The object of the invention is stated to be to provide a strong and durable support for heavy casks and barrels, one readily adjusted to any sized cask, and so constructed as to automatically adjust itself to the curve of the cask. It is designed principally for use in breweries for the support of large casks. There are six claims. It is conceded that there is no infringement of any of the first five claims. The sixth alone is relied upon. The drawings show, and the specification describes, a cask supported by means of four saddles, two placed near each end, and upon opposite sides of the cask. The upper faces of the saddles are concave, and shaped generally to receive the bulge of the cask. They are made self-adjustable to the cask and to each other. The support and seat for the saddles necessary to accomplish this result is called the "shoe," which rests upon a broad, firm base. The union between the shoe and the saddle is what is known as the "ball and socket," the lower surface of the saddle being convex and answering to the ball, and the upper surface of the shoe being concave, answering to the socket, and allowing the saddle to rock longitudinally and transversely, so as to fit the upper surface of the saddle to the conformation of the cask at the place of support. To anchor these shoes in position, or, in other words, to hold them in place, the patentee, in the drawings and specification, shows the shoe in ways on which rest tie rods. At first the construction was according to the description. Afterwards the shoes were made with broad bases, which rested directly on a concrete floor, and were held to their places by a tie rod. The sixth claim is as follows:

"In a cask support, the shoe, 3, provided with a concave seat, in combination with the self-adjusting saddles, 10, supported in said seat, substantially as described."

The first five claims are in various forms for the combination of the saddles, the shoes, and the ways provided for adjusting them to and from each other, and the locking device for securing them in their adjusted position. These claims being, by the concession of counsel, out of the case, the only question remaining is whether the claim for the shoe, provided with the concave seat in combination with the self-adjusting saddle, is valid. No testimony was taken for the defense, sole reliance being placed upon the fact that the ball and socket joint is as old as the creation of man, and universally known and adopted whenever required in the arts from the earliest periods, and that, therefore, there is no invention displayed in the complainant's device. I can see no escape for the complainant from this conclusion. He concedes that there is no infringement of any of the first five claims for the combination of the saddles, the shoes, and the locking device for holding them in position. It is impossible, in my view of the case, to sustain the claim to invention for that

portion of the combination, which is nothing more than the application of the old ball and socket joint to a saddle, which in itself is shaped so as to fit the surface to which it is to be applied. The joint, as has already been said, is old, and the shaping requires nothing more than mechanical skill of ordinary degree. The bill will be dismissed.